IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SHARN S. FENDERSON, | ) | CASE NO. 1:08 cv 114 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Sharn Fenderson's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I. PROCEDURAL HISTORY

On March 16, 2004 and March 29, 2004, Plaintiff filed an application for Supplemental Security Income benefits and Disability Insurance benefits, respectively, alleging a disability onset date of April 1, 2003 due to limitations related to mental impairments. On October 27, 2006, Administrative Law Judge ("ALJ") Mark M. Carrissimi determined Plaintiff had the

residual functional capacity ("RFC") to perform her past relevant work as a dishwasher and, therefore, was not disabled (Tr. 36). On appeal, Plaintiff claims the ALJ's determination was not supported by substantial evidence.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Born on March 9, 1966 (age 40 at the time of the ALJ's determination), Plaintiff is a "younger individual." *See* 20 C.F.R. §§404.1563, 416. 963. Plaintiff last completed the eleventh grade and has past relevant work as a dishwasher (Tr. 98-119, 290).

### B. Medical Evidence

From February 25, 2004 to March 2, 2004, Plaintiff was hospitalized for auditory hallucinations commanding her to harm herself or her husband (Tr. 142-45). Plaintiff's onset of hallucinations went back a number of years, when Plaintiff had been subject to the use of substances and had hallucinations related to substance use (Tr. 142). Plaintiff was on probation for domestic violence and assault of a police officer while intoxicated (Tr. 142-43). Plaintiff stated that, less than a month prior to the admission, she relapsed and started using cocaine and alcohol (Tr. 142). Her toxicology screens and blood alcohol level were negative (Id.). Plaintiff had a history of cocaine and alcohol abuse and had previously participated in rehabilitation programs (Tr. 143). Plaintiff said that she had drunk alcohol and used cocaine since her teen years (Tr. 142). Plaintiff's longest period of sobriety was seven years, at which time she had no hallucinations (Tr. 142-43). Plaintiff had no previous psychiatric hospitalizations or outpatient psychiatric care (Tr. 142). The only psychiatric care Plaintiff received was when she was in jail

for six months (Id.). In 2003, Plaintiff was in the county jail for one month and she was prescribed anti-psychotic medication, but she never followed through after her discharge (Id.).

Plaintiff stated that she was close to her sister and visited her to avoid responding to hallucinations (Tr. 143). Plaintiff's treatment regimen included Risperdal and psychoeducation intervention (Tr. 144). Plaintiff reintegrated, stabilized, and showed no evidence of psychosis with this treatment (Id.). Upon discharge, Plaintiff had grossly intact memory, fair attention and concentration, even mood, no free-floating anxiety; composed behavior, clear speech; relevant thought processes, no suicidal or homicidal ideation, and no auditory or visual hallucinations other than a whisper with no reactivity (Id.). One of her assets was that she was "employable" (Id.). Plaintiff was diagnosed with psychosis, NOS; cocaine dependence; alcohol abuse; and personality disorder, NOS (Tr. 145). Plaintiff's Global Assessment of Functioning ("GAF") score had increased from her admission score of 20 to 49 (Id.).

On March 15, 2004, Kancherla Rao, M.D., a psychiatrist at The Nord Center, performed a psychiatric follow-up evaluation (Tr. 183-85). Plaintiff reported some improvement in symptoms of hallucinations and abatement of suicidal ideation, but continued to experience symptoms and also had occasional auditory hallucination (Tr. 183). Plaintiff denied any intent to hurt herself or anybody (Id.). Plaintiff reported an extensive history of alcohol, cocaine, and marijuana use and stated that she had used cocaine and alcohol a week prior to the appointment (Id.). Plaintiff reported an increasing amount of depression after the death of her six month old son (Id.). On mental status examination, Plaintiff was casually dressed and groomed, appeared somewhat depressed and irritable, had appropriate affect to her thought content, and had poor insight and fair judgment (Tr. 184). Dr. Rao diagnosed major depression, recurrent with

3

psychotic features, poly-substance dependence in early remission, and borderline personality disorder (Tr. 185). Dr. Rao increased Plaintiff's Risperdal and added a new medication to control the symptoms of depression (Id.). Dr. Rao recommended that she abstain from street drugs and alcohol and indicated her prognosis for improvement was fair provided she was compliant with treatment recommendations (Id.). Dr. Rao recommended a reevaluation in one month and referring her to vocational rehabilitation when she was more stable psychiatrically (Id.). Plaintiff failed to keep her April 2004 appointment (Tr. 181). Dr. Rao closed the file because Plaintiff was in the county jail (Tr. 179-80).

Plaintiff served 90 days in jail and was released from jail on July 3, 2004 (Tr. 170, 174-75). Thereafter, Plaintiff returned to The Nord Center (Tr. 165-76). Plaintiff stated that she last drank alcohol three months prior to the appointment and last used cocaine six months prior to the appointment (Tr. 167). Plaintiff presented with symptoms of depression along with hallucinations and delusions and had no current suicidal or homicidal ideation (Tr. 174). On mental status examination, Plaintiff was oriented and casually dressed, had good hygiene and eye contact, her mood was appropriate, and she had fair judgment and insight (Tr. 172-73). Plaintiff stated that she got along "ok" with others but preferred to be by herself (Tr. 173). Plaintiff was diagnosed with major depressive disorder, recurrent with mood congruent-psychotic features; polysubstance dependence, early partial remission; and rule out borderline personality disorder (Tr. 174). Plaintiff's GAF score was 30 and her treatment plan included case management and a psychiatric evaluation to determine her need for medication (Tr. 157-62, 174-75). By July 29, 2004, Plaintiff's case was closed because she moved to Cleveland (Tr. 155-56, 163-64).

In October 2004, J. Tyson Merrill, Psy.D., a clinical psychologist, completed a state agency questionnaire regarding Plaintiff's daily activities (Tr. 192-96). Dr. Merrill indicated that Plaintiff was first seen on September 7, 2004 and last seen on October 14, 2004 (Tr. 192). She denied current substance use (Id.). Dr. Merrill noted that she was oriented, had depressed mood and affect, had psychomotor retardation, had increased anxiety due to paranoia, was fearful that others wanted to hurt her, and had delusional thinking and auditory hallucinations (Id.). Plaintiff's concentration was impaired by vigilance and anxiety due to constant paranoia and she had poor judgment regarding others' intentions toward her, but Dr. Merrill found it "hard to assess at this time" (Id.). Dr. Merrill opined that Plaintiff's ability to follow directions was compromised by fear/paranoia; her ability to maintain attention was distracted by paranoia, auditory hallucinations and fearfulness; and her ability to sustain concentration, persist at tasks, and complete them in a timely fashion was impaired due to psychotic symptoms (Tr. 193). Plaintiff only saw a few of her family members, she was uncomfortable around others, and her ability to adapt was impaired by constant fear that others were trying to hurt her (Id.). Dr. Merrill noted that Plaintiff was unable to tolerate the presence of others in work settings (Id.). Dr. Merrill further opined that Plaintiff was unable to tolerate being around people other than her mother and niece (Tr. 195). Dr. Merrill further opined that Plaintiff had "ok"sustainability, work pace, quality and effectiveness in the areas of food preparation, household chores, and personal hygiene (Tr. 196). Plaintiff was able to travel to her appointment to the clinic by bus but was unable to go to the store without her mother (Id.).

Todd S. Hochman, M.D., examined Plaintiff at the request of the agency on November 12, 2004 (Tr. 200). He diagnosed depression, right hip pain and psychosis (Id.). He opined that

5

Plaintiff would not have difficulties with work related to physical activities (Id.). However, given her depression, psychosis and hearing voices, "further follow-up with psychiatry" was recommended (Id.).

In January 2005, Tonnie A. Hoyle, Psy. D., a state agency psychologist, reviewed the record evidence (Tr. 197, 205-16). Dr. Hoyle considered Listings 12.03, 12.04, 12.08, and 12.09 (Tr. 206). Dr. Hoyle opined that Plaintiff had moderate restriction in activities of daily living, marked difficulties in maintaining social functioning, no episodes of decompensation, and moderate difficulties in maintaining concentration, persistence and pace (Tr. 211). Dr. Hoyle noted that Plaintiff's cocaine dependence and alcohol abuse appeared material, and opined that absent substance use, Plaintiff was capable of performing simple, repetitive tasks in a low pressure environment that did not have strict production standards or require close contact or coordination with co-workers or the general public (Tr. 210, 216). Dr. Hoyle noted that Plaintiff's statements were only partially credible due to her history of drug abuse and dependency (Tr. 216).

On November 6, 2005, Plaintiff was taken to the emergency room because she had taken "too many pills" and passed out (Tr. 236-55). Plaintiff denied being suicidal (Tr. 236). She was in an altered mental status, had been drinking alcohol and was unable to provide a history or cooperate for a complete examination (Id.). Laboratory tests were positive for ethanol and cocaine (Tr. 245, 247). Plaintiff subsequently sought treatment at MetroHealth on November 11 and 17 (Tr. 268-70). She stated that she stopped using cocaine in 1993 and occasionally drank alcohol (Tr. 269). Plaintiff stated that she had not seen a doctor or taken medication in four

months and her depression and paranoia had worsened (Id.). Medication was prescribed and a follow-up appointment with behavioral medicine was scheduled (Tr. 269-70).

Plaintiff was next seen at MetroHealth in June 2006 (Tr. 267). She said she had "just stopped alcohol and tobacco" and wanted to restart her psychiatric medication (Id.). Plaintiff had appropriate and coherent language, rocking behavior, and a flat affect (Tr. 268). Medication was prescribed (Id.).

In July 2006, Plaintiff underwent a mental health assessment (Tr. 262-67). Plaintiff stated that she had used crack, marijuana, and alcohol for four years, was clean for ten years, then started drinking six years ago when she returned to Cleveland (Tr. 263). Plaintiff said that she had been sober for one month (Id.). Plaintiff stated that she had fair to good relationships with her siblings and mother and described her parenting style as good when she was not using (Id.). On mental status examination, Plaintiff had poor hygiene and grooming, was cooperative but somewhat guarded, and had appropriate behavior (Tr. 264). Plaintiff was oriented, had clear and normal speech, had logical thought process, and had psychotic and paranoid thoughts, but denied suicidal or homicidal ideation (Tr. 264-65). Plaintiff had fair judgment and insight, poor memory, and "difficult" attention span and concentration (Tr. 265). Plaintiff was assessed a GAF score of 45-50 and diagnosed with paranoid schizophrenia, depressive disorder, and alcohol dependence in early remission (Id.). Plaintiff was prescribed medication and a follow-up appointment was scheduled (Tr. 265-66). By the next visit on August 21, 2006, Plaintiff was feeling better on the medication but still heard negative voices (Tr. 258). Plaintiff said that she had not drank alcohol in three months and had been off cocaine since 1993 (Id.). Plaintiff had adequate grooming and hygiene, cooperative and appropriate behavior, normal speech, full range

affect, organized racing thoughts, auditory hallucinations, impaired attention and concentration, poor memory, fair judgment and insight, and paranoid thoughts, but no evidence of delusions (Id.). Plaintiff's medication was adjusted (Tr. 259).

### C. Hearing Testimony

Plaintiff testified at her administrative hearing on September 12, 2006 that she had not worked since April 1, 2003 (Tr. 291). Plaintiff currently lived with her mother (Id.). She alleged disability based on mental impairments, including hallucinations, and testified that she was hospitalized in 2004 and currently took medications (Tr. 289-93, 298-99). Plaintiff testified that the medication helped lessen the intensity of the "voices" but she still heard them every day (Tr. 295-96). The medication also helped lessen the intensity of her paranoia (Tr. 296). Plaintiff testified that she heard voices when she was using drugs and alcohol and when she stopped using (Tr. 316). Plaintiff testified that she had difficulty concentrating (Tr. 297). Plaintiff stated that the last time she drank alcohol was three months prior to the hearing and the last time she used cocaine was about eighteen months prior to the hearing (Tr. 309). Plaintiff said that she was comfortable around her mom and sister, visited nieces, occasionally went to the store, and kept in touch with her cousin (Tr. 296-97, 300). Plaintiff stated that she helped clean the house, ran errands for her mother, cooked, and did laundry (Tr. 311-13). Plaintiff testified that from 1995 to 1997 she was self-employed in business with her mother selling items, and during that time she was not using drugs or alcohol (Tr. 300-03, 317).

### III. **DISABILITY STANDARD**

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381.

A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

### IV. **STANDARD OF REVIEW**

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the

Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

Plaintiff claims that the ALJ erred in his evaluation of her substance use. Specifically, Plaintiff claims the ALJ erred by failing to follow the procedure set forth in 20 C.F.R. §§ 404.1535 and 416.935, by determining that Plaintiff's use was a contributing factor material to disability, and by relying on the findings of Dr. Hoyle. Plaintiff also claims the ALJ improperly failed to elicit medical expert ("ME") testimony to clarify what effect, if any, Plaintiff's substance use has on her mental impairments and limitations. Plaintiff's claims are without merit.

### A. The ALJ's Evaluation of Disability under 20 C.F.R. §§ 404.1535 and 4116.935

Plaintiff first argues that the ALJ failed to follow the procedure set forth in 20 C.F.R. §§ 404.1535 and 416.935 because he did not first make a finding of disability. Under these provisions, when there is medical evidence of a drug addiction or alcoholism, an ALJ is first required to determine whether a claimant is disabled before considering the impact, if any, of the claimant's substance use. If the ALJ determines that the claimant is disabled, he or she must next determine "whether drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(b)(1). In accordance with these regulations, the ALJ in this case first determined that Plaintiff was disabled before considering the impact, if any, of Plaintiff's substance use.

The ALJ first found that Plaintiff has the severe impairments of major depressive disorder with psychotic features; polysubstance disorder, crack cocaine and alcohol; and,

10

borderline personality disorder (Tr. 29).  The ALJ then evaluated Plaintiff's mental impairments under Listing § 12.09B with reference to § 12.04.  Listing § 12.09 Substance Addiction Disorders comprises behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system. 20 C.F.R. 404, Subpart P, Appendix 1.  The required level of severity for these disorders is met when the requirements for depressive syndrome under Listing § 12.04 are satisfied. *Id.* at § 12.04B.  The requirements for depressive syndrome under Listing § 12.04 are satisfied when the requirements in both section A and B of this listing are satisfied:

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>   1. Depressive syndrome characterized by at least four of the following:
>     a. Anhedonia or pervasive loss of interest in almost all activities; or
>     b. Appetite disturbance with change in weight; or
>     c. Sleep disturbance; or
>     d. Psychomotor agitation or retardation; or
>     e. Decreased energy; or
>     f. Feelings of guilt or worthlessness; or
>     g. Difficulty concentrating or thinking; or
>     h. Thoughts of suicide; or
>     i. Hallucinations, delusions, or paranoid thinking;
>
> \* \* \*
>
> B. Resulting in at least two of the following:
>   1. Marked restriction of activities of daily living; or
>   2. Marked difficulties in maintaining social functioning; or
>   3. Marked difficulties in maintaining concentration, persistence, or pace; or
>   4. Repeated episodes of decompensation, each of extended duration;

*Id.*  The ALJ found that with respect to Listing § 12.09B, with reference to § 12.04, that Plaintiff has a major depressive disorder with psychotic features that results in the following "B" criteria: (1) moderate restriction of activities of daily living; (2) marked difficulties in maintaining social

11

functioning; (3) marked difficulties in maintaining concentration, persistence and pace; and (4) one episode of decompensation (Tr. 31).  Therefore, the ALJ concluded that Plaintiff's impairments meet the requirements of Listing § 12.09B with reference to § 12.04 (Tr. 33).  The ALJ next determined that Plaintiff would still have the severe mental impairments of major depression with psychotic episodes and borderline personality disorder if she stopped her substance use (Tr.).  However, the ALJ concluded that if Plaintiff stopped using substances, she would not have an impairment that meets any Listing (Id.).  Thus, it is clear that the ALJ complied with the procedural Social Security regulations by first determining Plaintiff was disabled under Listing § 12.09B with reference to 12.04 prior to considering the impact of substance use on her disability.

### B.  The ALJ's Determination that Plaintiff's Substance Use Was Material

Plaintiff next argues that the ALJ erred by determining that her substance use was a contributing factor material to disability.  In determining "whether drug addiction or alcoholism is a contributing factor material to the determination of disability," the key factor is whether the claimant would still be found disabled if she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1).  In making this determination, the ALJ is required to "evaluate which of [the claimant's] current physical and mental limitations, upon which [he or she] based [his or her] current disability determination, would remain if [the claimant] stopped using drugs or alcohol, and then determine whether any or all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. § 404.1535(b)(2).  The ALJ should look to periods of sobriety in the record to determine whether the claimant suffers from a work-limiting mental illness independent of the substance use. *Bartley v. Barnhart*, 117 Fed. Appx. 993, 998 (6th Cir. 2004).

In accordance with *Bartley*, the ALJ in this case looked to periods of sobriety in the record to determine whether Plaintiff has restrictions independent of substance use. The ALJ concluded that if Plaintiff stopped her substance use, she would not have an impairment or combination of impairments that meets or medically equals any listed impairment. The ALJ found that exclusive of her substance abuse disorder, Plaintiff has the "B" criteria of mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation (Tr. 33). These findings do not meet or equal the requirements of Listing § 12.09B with reference to 12.04 (Id.). The ALJ explained that Plaintiff has had brief periods of sobriety when her "B" criteria have met these restrictions (Id.). The ALJ then identified and reviewed a significant amount of record evidence in support.

The ALJ first pointed out that Plaintiff had been in previous rehabilitation programs, and that her longest period of sobriety was seven years, during which time she showed no evidence of hallucinations (Tr. 34). During the seven-year period when Plaintiff did not use substances, she was self-employed in California in a business with her mother (Tr. 34, 317). Plaintiff's earning levels were compatible with substantial gainful employment during part of that time, from at least 1995-97 (Id., Tr. 85). These facts are admitted by Plaintiff and/or stated by an evaluator at the Nord Center in notes from Plaintiff's February 2004 treatment (Tr. 142). In her brief, Plaintiff points out that at her February 2004 admission, her toxicology and blood alcohol levels were negative. She also asserts that the discharge notice does not state whether Plaintiff's mental diagnosis was substance induced. Although this is true, Plaintiff's discharge diagnosis was psychosis, NOS, cocaine dependence, alcohol abuse, and personality disorder (Tr. 145).

13

There is no indication that Plaintiff's substance use was in remission at this time, despite the negative toxicology and blood alcohol tests. The ALJ next noted that during Plaintiff's treatment at the Nord Center, she stabilized with medication and psychoeducation intervention (Tr. 33, 144-45). Plaintiff reintegrated and showed no evidence of psychosis (Id.). The ALJ also noted that Plaintiff's GAF score increased from 20 at admission to 49 at discharge (Id.). The evaluator at Plaintiff's discharge indicated that she "was employable" (Tr. 144).

The ALJ next noted that in October 2004, Dr. Merrill supplied comments indicative of Plaintiff's "B" criteria if she stopped using (Tr. 34). The ALJ states that Dr. Merrill found Plaintiff had "ok" sustainability, work pace, quality, and effectiveness of food preparation, household chores and personal hygiene (Id., Tr. 196). He also reported that Plaintiff had recently met a goal of traveling to the appointment by bus (Id.). According to the ALJ, Dr. Merrill's notes indicated that Plaintiff would not have a full circle of social interactions if she stopped using, but would be able to get along with others such as her mother and cousin (Id., Tr. 195). Plaintiff argues that Dr. Merrill's restrictions considered her capabilities without consideration of substances. However, Dr. Merrill merely stated that Plaintiff had a history past substance abuse and that she denied current use. There are no records from the time period between Plaintiff's July 2004 treatment at the Nord Center, when she admitted using cocaine and alcohol one week prior, and her September and October 2004 visits with Dr. Merrill, when she denied current use. Thus, even if Plaintiff was in fact not using at the time Dr. Merrill assessed her mental impairments, it is unclear how long Plaintiff had been substance free.

After finding that exclusive of substance use, Plaintiff's impairments do not meet or equal a listing, the ALJ concluded that if Plaintiff were to stop substance dependence, the

evidence shows she would retain a mental RFC for work that does not require the performance of more than simple, repetitive tasks, high production quotes or piece work, negotiation or confrontation, or more than superficial contact with coworkers, supervisors, and the public (Tr. 34). The ALJ explained that the record contains evidence related to periods of sobriety which support this finding. For example, the evidence shows that during the seven-year period when Plaintiff did not use substances, she was self-employed in California in a business with her mother (Tr. 34, 317). Plaintiff's earning levels were compatible with substantial gainful employment during part of that time, from at least 1995-97 (Id., Tr. 85). In addition, the evidence showed that Plaintiff's condition improved after admission and treatment at the Nord Center in February through March 2004 with psychoeducation and medication. Although Plaintiff was depressed and irritable, had crying spells and insomnia, and reported auditory hallucinations, she was casually dressed, had appropriate affect, and had coherent and relevant speech (Id.). She denied suicidal ideation and reported a decrease in auditory hallucinations. There was no evidence of delusions, panic, or anxiety; she was oriented; and memory and intellectual functions were grossly intact (Id.). Moreover, Plaintiff reported that Prozac was helpful (Tr. 183).

The ALJ next noted that when Plaintiff returned to the Nord Center in July 2004, she reported that she had been sober for three months (Tr. 35, 172-73). The record indicates that Plaintiff had spent the last three months in jail. Although Plaintiff complained of ongoing depressive symptoms along with hallucinations and delusions, she was oriented to person, place, and time; dress was casual and hygiene was good; eye contact was good; mood/affect was appropriate; and memory, concentration, judgment, and insight were fair. (Tr. 35). The ALJ also

noted that Plaintiff reported abstinence for three months in August 2006 (Tr. 35, 258-59). At that time, Plaintiff had adequate hygiene, was cooperative, was oriented to time and place, had full affect, and had fair judgment and insight (Id.). Although she had racing thoughts, her thought processes were logical and organized (Id.). In addition to the ALJ's observations, the records also shows that Plaintiff reported feeling better on medication, but that she still heard negative voices (Tr. 258-59). Her medication was thus increased (Id.).

      Finally, the ALJ engaged in a thorough credibility assessment of Plaintiff and reasonably concluded that Plaintiff's allegations were not entirely credible. The ALJ explained that the evidence showed Plaintiff would be able to meet the mental demands of the RFC he assessed if she were to stop substance dependence, as evidence by her ability to engage in SGA during part of the 7-year period that she did not used and lack of hallucinations during that time (Tr. 34). The ALJ also explained that Plaintiff's condition improved during times when she sought treatment and abstained from substance use. The ALJ pointed out that there are significant gaps in Plaintiff's history of treatment for her mental impairment and that Plaintiff has not always been truthful about her substance use. For example, although Plaintiff reported in November 2005 and August 2006 that she had been off crack cocaine since 1993, she acknowledged restarting in January 2004, and November 2005 testing was positive for alcohol and cocaine (Tr. 36).

      Based upon the above, the Court concludes there is substantial evidence to support the ALJ's conclusion that Plaintiff stopped her substance use, she would have a mental RFC for work that does not require the performance of more than simple, repetitive tasks, high production quotes or piece work, negotiation or confrontation, or more than superficial contact with

coworkers, supervisors, and the public. As observed by the ALJ, the record shows that Plaintiff did not have hallucinations and was able to engage in substantial gainful employment during the seven-year period when she was not using substances. The record also confirms the ALJ's observation that Plaintiff's condition improved with medication and psychoeducation intervention when she underwent treatment and abstained from substance use.

Plaintiff asserts that none of the doctors who evaluated her suggested that substances were causing or significantly contributed to her mental illness and symptoms, except Dr. Hoyle. Plaintiff claims their opinions considered her capabilities without consideration of substances. Plaintiff also claims that to extent that the ALJ relied on the opinion of Dr. Hoyle, this reliance was in error. As asserted by Plaintiff, aside from Dr. Hoyle, the doctors on record do not indicate whether their opinions contemplate mental impairments and limitations separate from substance use. However, all of them included notes indicating that they were at least aware of Plaintiff's past substance use, even if she denied current use at the time of the doctor visit. And, the record shows that since her alleged onset date, Plaintiff has not had a period of sobriety greater than three months. Moreover, as observed by the ALJ, the record casts doubt on even the three-month periods of sobriety reported by Plaintiff because she has not been always truthful with respect to her use and because significant gaps in her mental health treatment prevent one from verifying whether she in fact maintained sobriety for the time periods alleged.

With respect to Dr. Hoyle, the record shows that he reviewed the record evidence in January 2005 and found Plaintiff was capable of performing simple, repetitive tasks in a low pressure environment that did not have strict production standards or require close contact or coordination with co-workers or the general public (Tr. 210, 216). Although the ALJ did not cite

17

Dr. Hoyle's records, it appears the ALJ generally accepted his conclusions because the ALJ ultimately found that Plaintiff was capable of performing work that consists of simple repetitive tasks and no high production quotas or piecework, and no more than superficial contact with coworkers, supervisors and the public without negotiations or confrontations. It appears Plaintiff's main contention is that the ALJ improperly relied on Dr. Hoyle's finding of materiality. Dr. Hoyle noted that Plaintiff's statements were only partially credible due to her history of drug abuse and dependency (Tr. 216). Dr. Hoyle also stated that Plaintiff's drug and alcohol use appeared material (Id.). There is no indication that the ALJ relied on Dr. Hoyle's statements with respect to materiality. Moreover, as explained above, the ALJ engaged in a detailed review of the evidence and thorough credibility assessment, and provided amble explanation for his determination that Plaintiff's substance use was a contributing factor material to disability. The record as a whole provides substantial support for the ALJ's determination as to materiality. Accordingly, to the extent the ALJ relied on Dr. Hoyle's opinions, this reliance does not provide a basis for remand.

### C. The ALJ's Decision to Not Use Medical Expert Testimony

Plaintiff also claims the ALJ improperly failed to elicit ME testimony to clarify what effect, if any, Plaintiff's substance use has on her mental impairments and limitations. Although ME testimony would have been helpful, the ALJ was not required to call an ME under the circumstances in this case. The purpose of the medical expert is to advise the ALJ on medical issues, answer specific questions about the claimant's impairments, the medical evidence, the application of the listings, and functional limitations based on the claimant's testimony and the record. *See* 20 C.F.R. § 416.927(e)(2)(iii); *see* also HALLEX 1-2-5-32. Medical expert

testimony consistent with the evidence of record represents substantial evidence to support the Commissioner's decision. *See Baker v. Shalala,* 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Secretary of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989). However, an ALJ's use of a medical expert is not mandatory unless the evaluation and interpretation of background medical test data is required or unless the use of an ME is ordered by the Appeals Council or a court. *See* HALLEX 1-2-534. The ALJ's disability determination in this case did not require, nor did the ALJ engage in, the evaluation and interpretation of background medical test data. And, the use of an ME was not ordered by the Appeals Council or any court. Accordingly, the Court finds that the ALJ did not err by declining to solicit ME testimony.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: August 4, 2008